IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| William Roman, ) | |
| ) | |
| ) | Civil Action No. 8:05-2806-MBS-BHH |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| John LaManna, Warden, ) | |
| FCI-Edgefield, Harley G. ) | |
| Lappin in his official capacity ) | |
| as Director of the Bureau of ) | |
| Prisons, ) | |
| ) | |
| Respondents. ) | |
| ) | |

The plaintiff, a federal prisoner, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the respondent Bureau of Prisons' ("BOP's") refusal to place him in a shock incarceration program. This matter is before the Court on the respondents' motion to dismiss or, alternatively, for summary judgment.[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

---

[1]Because the parties submitted, and the court considered, matters outside of the complaint, the respondents' motion has been treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").

The petitioner brought this habeas action on September 27, 2005. On November 23, 2005, the respondents moved for summary judgment. By order filed November 28, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 17, 2006, the petitioner filed a response.

## **FACTS PRESENTED**

The petitioner is currently a federal prisoner being housed in Federal Correctional Institute at Edgefield ("FCI-Edgefield"). (Pet.¶ 1.) On May 23, 2004, the petitioner pled guilty in Florida to possession with intent to distribute a controlled substance. (Pet. ¶ 18.) On September 17, 2004, the Federal District Court for the Middle District of Florida sentenced the petitioner to 37 months and recommended the BOP designate the petitioner to the Intensive Corrections Center ("ICC") program, a shock incarceration program commonly referred to as boot camp. (Pet. ¶ 19.) The petitioner began to serve his sentence on October 13, 2004. (Pet. ¶ 20.) The petitioner contends that in November 2004, the BOP made a determination to place him in the ICC program, but held the transfer in abeyance pending bedspace. (Pet. ¶ 21.)

On January 5, 2005, respondent Harley Lappin, the Director of the BOP, announced that the BOP was discontinuing the ICC program due to budgetary pressures, effective immediately. (Pet. ¶ 24.) The petitioner contends that, as a result of the failure to place him into the ICC program, he is not eligible for a six-month sentence reduction. He claims

that termination of the program violates statutory law because the BOP does not have the discretion to terminate the program; the Administrative Procedures Act ("APA") because the termination was effected without notice and comment; and the Ex Post Facto Clause. He seeks an order directing the BOP to place him in the ICC program, or, alternatively, place him in home confinement.

The Court notes that the petitioner states he has also raised these issues in connection with a 28 U.S.C. § 2255 motion pending in the Federal District Court for the Middle District of Florida. (Pet. at 2 n.1.) Furthermore, the petitioner "submits that [a] § 2255 [motion] is the appropriate remedy . . ." rather than a § 2241 petition. (*Id*.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

### BACKGROUND

In 1990, Congress authorized the BOP to place a federal prisoner who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, in the ICC program. *See* 18 U.S.C. § 4046. Section 4046 provides:

4

> (a) The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.
>
> (b) For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to-
>
> (1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and
>
> (2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.
>
> (c) An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

18 U.S.C. § 4046.

The BOP also adopted regulations implementing the ICC program. *See* 28 C.F.R. §§ 524.30-524.33. The regulations expanded eligibility to include inmates who are serving "a sentence of more than 30, but not more than 60 months, and [are] within 24 months of a projected release date." 28 C.F.R. § 524.31(a)(1)(ii). The regulations specify that the placement of inmates in the ICC program "is to be made by [BOP] staff in accordance with sound correctional judgment and the availability of [BOP] resources." 28 C.F.R. § 524.31(b). In addition, an inmate who successfully completes the ICC program, maintains

5

successful participation in a community-based program, and has a period of supervised release to follow his imprisonment is eligible for up to a six month reduction in sentence. 28 C.F.R. § 524.32(d)(2).

The United States Sentencing Guidelines provide: "The court, pursuant to 18 U.S.C. § 3582(a) and 3621(b)(4), may recommend that a defendant who meets the criteria set forth in 18 U.S.C. § 4046 participate in a ICC program. U.S. Sentencing Guidelines Manual § 5F1.7 (Policy Statement).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The respondents contend the petitioner has failed to exhaust his administrative remedies. The requirement that federal prisoners exhaust administrative remedies prior to seeking habeas relief under 28 U.S.C. § 2241 is judicially imposed. The petitioner contends exhaustion may be excused when the exhaustion process would be futile. Although the Fourth Circuit has not directly considered whether a futility exception applies in § 2241 habeas cases, the Court in *Rowe v. Petyon*, 383 F.2d 709, 711 (4th Cir. 1967), held that a federal prisoner attacking the constitutionality of a future state sentence was not required to exhaust state remedies where the question to be decided was already presented by another prisoner and rejected upon procedural grounds.

Likewise, here, exhaustion would be futile given that the petitioner is not challenging the application of the program to him, but the validity of the BOP's discontinuance of the program. Under these circumstances, the purposes of exhaustion would not be served by requiring the petitioner to exhaust his administrative remedies. Accordingly, the court

declines to recommend dismissal of this action based upon the petitioner's failure to exhaust his administrative remedies.

**STANDING**

The respondents contend the petitioner does not have Article III standing for any of the relief he seeks. Article III, Section 2, of the United States Constitution provides that federal courts may adjudicate only live cases or controversies. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To have standing, "the litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Id.* Furthermore, the litigant must have suffered an "injury in fact" - which is 1) concrete and particularized; 2) actual or imminent, not conjectural or hypothetical; and 3) likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)(internal quotation marks and citations omitted)

Under the "injury in fact" element, allegations of speculative future injury do not suffice. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983). A future injury satisfies the "imminence" requirement only if the injury is "certainly impending." *Lujan*, 504 U.S. at 565 n. 2. The concept of imminence is intended to ensure that the plaintiff's alleged injury is not overly speculative. *Id*.

Here, the petitioner has suffered no "injury in fact" under the first element of standing because he cannot show that he would have successfully completed the program. There is no guarantee that petitioner would have completed the admittedly

7

rigorous program had he been participated in it. *See Holcombe v. Fleming*, 69 Fed. Appx. 658 (5th Cir. 2003) (citation omitted). The only way for this court to grant the petitioner the relief he seeks is if the petitioner were accepted into the ICC program <u>and</u> successfully completed it. *See* 28 C.F.R. §§ 524.32(d); 524.33. The petitioner does not and cannot show this. Therefore, the petitioner's future successful completion of the ICC program and his threat of future injury are too speculative to find Article III standing.

For the same reasons, the petitioner also cannot meet the third element of the standing test. It is not likely, it is only speculative, that the injury that he claims can be redressed and it certainly cannot be redressed with the relief he seeks. For petitioner to have standing, he must allege facts which show that he "personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508 (1975). Under petitioner's pleadings, a challenge to the execution of his sentence essentially equals a request that this Court order the reinstatement of the ICC program, order that the petitioner be placed in the ICC Program, and order that he be deemed to have successfully completed it. This the court cannot do.[2] Based upon the foregoing, the court concludes that the petitioner's claims, including his requests for relief, are too speculative to meet the threshold requirement of Article III standing.

---

[2] To do so, would be tantamount to altering the petitioner's sentence. However, as discussed herein, this Court, not having sentenced the petitioner, has no jurisdiction to consider that type of claim.

The petitioner argues the BOP exceeded its statutory authority when it cancelled the ICC program because it lacked discretion to terminate the program. The respondents contend the BOP had the discretion. Whether the BOP had discretion to terminate the ICC program is a question governed by the two-step framework for statutory interpretation established by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under this two-step analysis, a court must first look to the language of the statute itself to determine whether the statutory language is clear and unambiguous, and if so, "that is the end of the matter." *Chevron*, 467 U.S. at 842-43.

The statute authorizing the BOP to operate the ICC program provides that the BOP "*may* place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months, if such person consents to the placement." 18 U.S.C. § 4046(a)(emphasis added). "The word 'may' customarily connotes discretion." *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335 (2005); *see also Lopez v. Davis*, 531 U.S. 230, 241 (2001) (contrasting Congress' use of the "permissive 'may' " with the "mandatory 'shall' "). By using the word "may" instead of "shall," Congress gave the BOP discretion to operate its ICC program. This discretion includes the decision whether to operate one at all. *See Castellini v. Lappin*, 365 F.Supp.2d 197, 202 (D.Mass. 2005) ("[T]his Court agrees with the agency's reasonable interpretation of the word 'may' in § 4046, and holds that Congress intended to authorize the BOP to operate a boot camp program but did not intend to require operation of such a program.").

9

Furthermore, Congress did not specifically appropriate funds for the ICC program. *See id.* at 199. Instead, Congress allocated a lump-sum to the BOP. *See United States v. Serrato*, 2005 WL 1661831, *1 (D.Or. 2005). Under these circumstances, the BOP's decision to allocate its resources as it sees fit is within its discretion and the BOP's decision to terminate the ICC program for budgetary reasons is not subject to judicial review.

**APA**

The petitioner also complains that the BOP terminated the ICC program in violation of the APA. Specifically, the petitioner argues that the BOP violated the "notice-and-comment" requirement for agency rule making under the APA. Assuming without deciding that review under the APA is proper, the petitioner has failed to demonstrate a violation of the notice-and-comment requirement.

The notice-and-comment provision of the APA requires that, subject to certain exceptions, administrative agencies must give "[g]eneral notice of proposed rule making" by publication in the Federal Register, unless persons subject to the proposed rule "are named and either personally served or otherwise have actual notice thereof in accordance with law." 5 U.S.C. § 553(b). After the requisite notice is given, the APA requires that the agency proposing the particular rule "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c).

The notice-and-comment requirement, however, expressly excludes "general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993)(internal citation omitted). The BOP's decision to terminate the ICC program is not the sort of rule subject to the notice-and-comment requirement.

As outlined above, the BOP elected to terminate the ICC program because of budgetary constraints. Because the decision to terminate the ICC program discontinues a discretionary allocation of unrestricted funds, the decision qualifies as a general statement of BOP policy. *See id.* ("Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation.") As a general statement of policy, the BOP's decision is not a rule-making decision under the APA and is therefore exempt from the notice-and-comment requirement. *See United States v. McLean*, 2005 WL 2371990, *4 (D.Or. Sept. 27, 2005) (finding that the BOP's decision to terminate the boot camp program did not issue new rules or regulations regarding participation in the boot camp program, but issued a general statement of policy that it will reallocate resources and no longer fund the program); *Mares v. Federal Bureau of Prisons*, Civil No. H-05-3805, 2005 WL 3263916, *2 (S.D.Tex.

Nov.28, 2005) (same). Based upon the foregoing, the petitioner cannot demonstrate a violation of the APA.

## DUE PROCESS

The petitioner contends that the BOP violated his due process rights by eliminating the ICC program. The petitioner contends that, in imposing his punishment, the sentencing court relied upon the continued existence of the ICC program and suggests that the court might have reduced his sentence had it known the program was about to be terminated.

To the extent that the petitioner complains that termination of the ICC program affects the way in which his sentence will be performed, the petitioner has no general due process right to participate in the ICC program. His participation in the ICC program was contingent upon the "sound correctional judgment" of the BOP and the "availability of Bureau resources." 28 C.F.R. § 524.31(b). A prisoner does not have a constitutional due process right to incarceration in a particular place or at a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Decisions regarding classification and designation of inmates to a particular prison facility or program are vested within the BOP. *See* 18 U.S.C. § 3621(b). A sentencing court may make a recommendation, but it has no power to dictate the place or manner of imprisonment. *See, e.g., United States v. Serafini*, 233 F.3d 758, 778 n. 23 (3rd Cir. 2000); *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). Accordingly, the petitioner

fails to articulate a due process violation in connection with the manner in which his sentence has been performed.

To the extent that the petitioner alleges that his sentence is unlawful because it was based on a material misunderstanding, his claim challenges the sentence and thus belongs in a motion filed with the sentencing court under 28 U.S.C. § 2255, which the petitioner states he has filed in the Florida sentencing court. However, this Court, not having sentenced the petitioner, has no jurisdiction to consider that type of claim. *See, e.g., Fason v. Sanders*, 2005 WL 2897041 (E.D.Ark. Nov.3, 2005) (noting whether participation in ICC was a material part of the sentence imposed is a question that can be addressed only to the sentencing judge in a motion pursuant to § 2255) (*citing McLean*, 2005 WL 2371990). This petition under § 2241 allows the Court to only correct errors in the administration of a sentence and the only way the petitioner can show that he is entitled to relief is to demonstrate that he has been denied a sentence reduction that he has already earned which as stated above the petitioner cannot do. Accordingly, the petitioner fails to articulate a due process violation in connection with the manner in which his sentence has been performed. The Court expresses no view about whether the petitioner's due process claim might be successful in a proceeding governed by § 2255. It merely concludes that the petitioner is not entitled to relief in this § 2241 action.[3]

---

[3]The district courts have been inconsistent in determining whether claims complaining of the BOP's cancellation of the ICC program are cognizable under § 2241 or § 2255. *See, e.g., United States v. Wiggins*, 2005 WL 3216754 (N.D.Ill. 2005); *Mendez v. United States*, 2005 WL 2371979 (W.D. Tex. 2005); *Serrato*, 2005 WL 1661831 (all holding that such petitions should be brought under § 2241). Cf. *McLean,* 2005 WL 2371990 and *United States v. Coleman*, 2005 WL 233825

13

**EX POST FACTO CLAIMS**

The petitioner argues that terminating the ICC program has retroactively increased his sentence violating the ex post facto clause. Article I, Section 9 of the United States Constitution provides that "[n]o . . . ex post facto law shall be passed." U.S. CONST. art. I, § 9, cl. 3. The ex post facto clause prohibits "making more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (citation and quotation omitted).  However, "[n]ot every retroactive procedural change creating a risk of affecting an inmate's term or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 250 (2000). The Supreme Court has clarified that "the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's 'opportunity to take advantage of provisions for early release,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n. 3 (1995) (citation omitted).

The decision to terminate the ICC program merely affects the opportunity to participate in a discretionary program, the successful completion of which may allow for an early release.  This court, like the vast majority of other courts addressing the issue, concludes that petitioner fails to allege an ex post facto violation in the BOP's cancellation

---

(D.Conn. 2005) (both granting § 2255 petitions because sentencing courts relied the ICC program as an option for the petitioners).

of the ICC program. *See, e.g., Almanza v. Fed. Bureau of Prisons*, 2006 WL 44072 (S.D.Tex. 2006); *Fason*, 2005 WL 2897041; *McLean*, 2005 WL 2371990.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the respondent's Motion for Summary Judgment be GRANTED and the petitioner's petition be DISMISSED with prejudice.

IT IS SO ORDERED AND RECOMMENDED.


S/Bruce H. Hendricks
United States Magistrate Judge

July 24, 2006
Greenville, South Carolina